733 S.E.2d 619

**CAROLINA FIRST BANK, n/k/a TD Bank, NA, Respondent,**

**v.**

**BADD, LLC, William McKown, and Charles A. Christenson, Defendants,**

**Of whom BADD, LLC and William McKown are Appellants.**

**BADD, LLC and William McKown, Third–Party Plaintiffs,**

**v.**

**William Rempher, Third–Party Defendant.**

Appellate Case No. 2011–187747.

No. 5041.

Court of Appeals of South Carolina.

Heard Sept. 13, 2012.
Decided Oct. 24, 2012.
Rehearing Denied Dec. 21, 2012.

Richard R. Gleissner, of Gleissner Law Firm, LLC, of Columbia, for Appellants.

William Wayne DesChamps, III, of DesChamps Law Firm, of Myrtle Beach, for Respondent.

WILLIAMS, J.

BADD, LLC (BADD) and William McKown appeal the circuit court's order referring the instant case to the master-in-equity (master), arguing the circuit court erred in (1) referring Carolina First Bank's (Carolina First) claim against McKown as guarantor to the master based on its finding that the main purpose of the action was equitable in nature; and (2) referring BADD and McKown's counterclaims to the master based on its finding that those claims were permissive counterclaims asserted in an equitable action and, thus, that BADD and McKown waived their right to a jury trial on those claims. We reverse.

## I. FACTS

On March 14, 2008, Charles Christenson and McKown, as members of and on behalf of BADD, executed a promissory note and mortgage to obtain financing for the acquisition of income-producing real estate. McKown also executed a guaranty at the same time, personally guaranteeing performance and payment of the promissory note. On April 1, 2008, Christenson and McKown, again on behalf of BADD, executed another promissory note and mortgage to obtain additional financing for income-producing real estate (collectively Notes and Mortgages). McKown executed a second guaranty on the same day (collectively Guaranties). In 2009, Christenson began experiencing financial problems and sought McKown's consent to allow William Rempher to buy his interest in BADD and assume responsibility for the operations of BADD. McKown agreed to the arrangement, and Rempher became a member of BADD.

On September 9, 2010, Carolina First filed an action against BADD seeking judgment for the full amount owed on the Notes and Mortgages and foreclosure and sale of the properties secured by the Mortgages. In addition, Carolina First sought a judgment against McKown, as guarantor of the Notes and Mortgages, for payment of the residue of the

mortgage indebtedness, if any, remaining unsatisfied after the judicial sale of the properties. In response, McKown demanded a jury trial on Carolina First's claim against him based on the Guaranties and, along with BADD, filed several counterclaims against Carolina First, including civil conspiracy, breach of contract, and a claim seeking a determination that the Guarantees were unconscionable and, thus, unenforceable. In addition, McKown impleaded Rempher as a third-party defendant by alleging causes of action against him for civil conspiracy, breach of contract, intentional interference with contractual relations and prospective business relations, and breach of fiduciary duty. Carolina First filed a motion to refer the entire case to a master-in-equity, and the circuit court granted the motion, finding that the action brought by Carolina First was an equitable action to foreclose two mortgages and that BADD and McKown waived their right to a jury trial on their counterclaims because the claims were permissive. This appeal followed.

## II. STANDARD OF REVIEW

"Whether a party is entitled to a jury trial is a question of law." *Verenes v. Alvanos,* 387 S.C. 11, 15, 690 S.E.2d 771, 772 (2010). "An appellate court may decide questions of law with no particular deference to the [circuit] court." *Id.* at 15, 690 S.E.2d at 772–73.

## III. LAW/ANALYSIS

McKown argues that Carolina First's claim against him for any indebtedness resulting after the sale of the subject properties is a breach of contract claim arising from the Guaranties and is legal in nature. Accordingly, McKown asserts the circuit court erred in referring this claim to the master. In addition, McKown and BADD argue the circuit court erred in referring their legal counterclaims for civil conspiracy and breach of contract to the master. We agree.

"Generally, the relevant question in determining the right to trial by jury is whether an action is legal or equitable; there is no right to trial by jury for equitable actions." *Lester v. Dawson,* 327 S.C. 263, 267, 491 S.E.2d 240, 242 (1997). "A mortgage foreclosure is an action in equity." *U.S. Bank Trust Nat'l Ass'n v. Bell,* 385 S.C. 364, 373, 684 S.E.2d 199, 204 (Ct.App.2009) (internal quotation marks omitted). However,

"[i]t is well settled that a guarantor's liability is an independent contractual obligation." *TranSouth Fin. Corp. v. Cochran*, 324 S.C. 290, 295, 478 S.E.2d 63, 65 (Ct.App.1996). Accordingly, a claim to recover on a guaranty agreement is one at law, even if the plaintiff seeks a deficiency judgment resulting from the foreclosure of real property. *See S. Bank & Trust Co. v. Harley*, 295 S.C. 423, 424, 368 S.E.2d 908, 909 (1988) (noting that a plaintiff's case seeking a deficiency judgment on a guaranty agreement after the foreclosure of real properties "was a law case"); *see also Johnson v. S.C. Nat'l Bank*, 292 S.C. 51, 53, 354 S.E.2d 895, 896 (1987) (classifying a party's counterclaim for damages under a guaranty agreement as a "legal counterclaim"). "When a complaint raises both legal and equitable issues and rights, the legal issues are determined by a jury while equitable issues are for the judge." *JASDIP Props. SC, LLC v. Estate of Richardson*, 395 S.C. 633, 639, 720 S.E.2d 485, 488 (Ct.App. 2011).

In its order referring this case to the master, the circuit court found that the main purpose of the instant action was to foreclose on the properties securing the Notes and that it was therefore appropriate to refer the claims on the Guaranties to the master as well as the foreclosure claim. This reasoning traces its roots to the case of *Alford v. Martin*, in which our supreme court explained that "[t]he character of an action is determined by the complaint in its main purpose and broad outlines and not merely by allegations that are merely incidental." 176 S.C. 207, 212, 180 S.E. 13, 15 (1935). However, our supreme court more recently expressed its concern in *Floyd v. Floyd* "that, as courts have sought to ascertain the 'main purpose' of lawsuits, the pendulum appears to have swung with steadied progress toward decisions tending to place within the sole purview of the equity judge issues properly triable only by jury." 306 S.C. 376, 380, 412 S.E.2d 397, 399 (1991). Consequently, "[w]ith a view toward harmonizing the case law on this issue," the supreme court clarified "that in instances where legal and equitable issues or rights are asserted in the same complaint, the legal issues are for determination by a jury and the equitable issues are to be decided by the court." *Id.*

Based on the supreme court's holding in *Floyd*, we hold the circuit court erred in referring Carolina First's claim against McKown arising from the Guaranties to the master. This claim was separate and distinct from the foreclosure action and was legal in nature. Accordingly, McKown was entitled to a jury trial on this claim, and we reverse the circuit court's order referring this claim to the master. Further, the filing of a legal counterclaim in response to an equitable complaint amounts to a waiver of the right to a trial by jury only when the counterclaim is permissive. *See Johnson*, 292 S.C. at 55–56, 354 S.E.2d at 897. Because we find Carolina First's complaint against BADD and McKown contained both a legal and an equitable claim, we find BADD and McKown did not waive their right to a jury trial by filing legal counterclaims against Carolina First. Accordingly, we also reverse the circuit court's order to the extent it referred BADD and McKown's counterclaims for breach of contract and civil conspiracy to the master and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

FEW, C.J., and PIEPER, J., concur.